IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RUSTY DICKERSON                                                              PLAINTIFF

v.                              Civil No. 05-4004

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

Plaintiff, Rusty Dickerson, appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his application for disability insurance benefits (hereinafter "DIB"), and supplemental security income benefits (hereinafter "SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i)* and *423,* and supplemental security income benefits (hereinafter "SSI"), and § 1602 of Title XVI, *42 U.S.C. § 1381a,* respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g).*

The history of the administrative proceedings is contained in the appeal briefs and the ALJ's decision, and will not be recounted here except as necessary. However, it is noted that plaintiff filed his applications for DIB and SSI on June 11, 2003 (T. 56-58, 142-145). For purposes of his DIB application, he alleged an onset date of August 1, 2002 (T. 56). The application was denied initially and on reconsideration. Plaintiff requested an administrative hearing, which request was granted and the hearing was conducted on June 29, 2004 (T. 152-171). On August 16, 2004, the ALJ issued an unfavorable decision (T. 13-20). The Appeals

Council declined the plaintiff's request for review of the hearing decision, by Order dated December 20, 2004 (T. 4-9).

Plaintiff was 40 years of age at the time of the administrative hearing and has a seventh grade, special education (T. 56, 142, 155, 79, 84, 157, 103). He has past relevant work as an assembly line mechanic/oiler (T. 158-159, 87). Plaintiff asserts disability due to: low back syndrome with bulging disc and radiculopathy; headaches; limited intellectual functioning, situational depression; and, insomnia/fatigue.

The Appeals Council's denial of the plaintiff's Request for Review of the hearing decision rendered it the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision. See *42 U.S.C. § 405(g)*. The parties have each filed an appeal brief (Doc. #3 & 4), and this matter is now ready for consideration.

**Applicable Law:**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.2002)*. Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.2003)*. As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari, 258 F.3d 742, 747 (8th Cir.2001)*. In other words, if after reviewing the record it is possible to draw two inconsistent

AO72A
(Rev. 8/82)

positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir.2000)*.

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability which can be expected to result in death or which has lasted or can be expected to last for at twelve consecutive months, and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A)*.

The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *42 U.S.C. § § 423(d)(3), 1382c(3)(c)*. A plaintiff must show that his disability, not simply his impairment, has lasted or can be expected to last for at least twelve consecutive months. Further, the plaintiff has the burden of showing that he is not able to perform his past relevant work. *Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir.1994)*. Thus, the plaintiff has a responsibility to present the strongest case possible. See *Thompson v. Sullivan, 928 F.2d 255, 260 (8th Cir.1991)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 404.1520(b)*. If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step 2 involves a determination, based solely on the medical evidence, of whether the

claimant has a severe impairment or combination of impairments. *Id., § 404.1520(c); see 20 C.F.R. § 404.1526.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 404.1520(d).* If so, benefits are awarded; if not, the evaluation continues.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 404.1520(e).* If so, benefits are denied; if not, the evaluation continues.

Step 5 involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id., § 404.1520(f).* If so, benefits are denied; if not, benefits are awarded.

It is also noted that whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d).* Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e).* In the instant case, the ALJ concluded that plaintiff did not have any medically determinable mental health impairment.

Moreover, the court's review is not simply "a rubber stamp for the [Commissioner's] decision and involves more than a search for evidence supporting the [Commissioner's] findings." *Tome v. Schweiker, 724 F.2d 711, 713 (8th Cir.1984).* Indeed, "[t]o determine

whether existing evidence is substantial, '[the court] must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it.' " *Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999)* (quoting *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993))*. In addition, the court's review of the decision must include a determination as to whether the proper legal standards were applied. *See Nettles v. Schweiker, 714 F.2d 833, 835-36 (8th Cir.1983)*. Thus, this court's review is both limited and deferential to the agency. See *Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir.1996)*.

Further, the ALJ may discredit subjective complaints which are inconsistent with the record as a whole. *Ownbey v. Shalala*, *5 F.3d 342, 344 (8th Cir.1993)*. The law on this issue is clear. Under *Polaski v. Heckler*, *739 F.2d 1320, 1321-22 (8th Cir.1984),* "an ALJ must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Harris v. Shalala*, *45 F.3d 1190, 1193 (8th Cir.1995); see also Baker v. Sec. of HHS, 955 F.2d 552, 555 (8th Cir.1992)*. The absence of an objective medical basis which supports the subjective complaints of pain is just one factor to be considered in evaluating the credibility of a plaintiff's subjective complaints of pain. *Polaski v Heckler, 751 F.2d 943, 948 (8th Cir.1984); see also, Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir.1995)*. The ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler, 783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 948-950 (8th Cir.1984))*. Consideration must also be given to all the evidence presented related to the claimant's prior work history, and the observations of non-medical third parties, as well as

treating and examining physicians related to the above matters. *20 C.F.R. § 416.929; Social Security Ruling 96-7p; Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984)*(subsequent history omitted).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, *739 F.2d at 1322.*

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, *830 F.2d 878, 882 (8th Cir.1987)*. The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, *862 F.2d 176, 179 (8th Cir.1988).*

Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, *783 F.2d at 130* (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

In summary, the ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the

inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, 783 F.2d at 131 (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988).* Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." *Id.; See 20 C.F.R., Pt. 404, Subpart P, Appendix 2, §§ 200.00(e).*

Residual functional capacity is what a plaintiff can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the plaintiff's description of his limitations. *Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.2001);* see also, *Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995); 20 C.F.R. §§ 416.945(a).*

When a plaintiff suffers from exertional and nonexertional impairments, as asserted here, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the plaintiff's work capacity. *Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir.1988).* If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled. *Id.* That is to say, "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the

nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Id. at 349-50.* The United States Court of Appeals for the Eighth Circuit has explained as follows:

> In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled.

*Id. at 350.* See also, *Holz v. Apfel, 191 F.3d 945, 947 (8th Cir.1999); Foreman v. Callahan, 122 F.3d 24, 26 (8th Cir.1997); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir.1997).*

**Discussion:**

In his written decision, the ALJ found that the plaintiff meets the nondisability requirements for DIB, and has not engaged in substantial gainful activity since his alleged onset date of August 1, 2002 (T. 56). The ALJ next determined that the plaintiff suffers from severe physical impairments, i.e., low back syndrome and lumbar disc bulge (T. 19), but that these impairments do not meet or medically one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Plaintiff's allegations regarding his limitations were found to be "not totally credible." (T. 19-20) Further, plaintiff was found to retain the residual functional capacity to perform the full range of light work (T. 19, 20). Finally, the ALJ concluded, based solely upon the Medical-Vocational Guidelines, that plaintiff is not and was not under a disability at any time through the date of the decision (T. 20).

At the outset, we note that the ALJ clearly found plaintiff's limited intellectual

functioning and depression to be nonsevere, stating:

> There has been some suggestion of significantly limited intellectual functioning, as well as situational depression (Exhibits 5E, 7E). The [DDS] consultant concluded [] however, that claimant's level of adaptive functioning, as demonstrated by an extensive work history which included assembly line repair work, was not consistent with mental retardation. The [ALJ] agrees with this analysis; claimant has not sustained his burden of demonstrating the existence of a medically determinable mental health impairment. Moreover, probative evidence affirmatively establishes that claimant enjoys a high level of adaptive functioning. Claimant's earnings record reflects that claimant was gainfully employed for many years and worked in competitive (sic) at the substantial gainful level of earnings (Exhibit 2D-5D). Moreover, claimant has no longitudinal history of treatment by mental health professionals. Claimant has not provided any specific credible clinical findings which would support a finding of a mental health impairment.

(T. 16).

However, during the application process, plaintiff was interviewed by an employee of the Social Security Administration (hereinafter "SSA"), Ms. Candy Slocum, who made the following observation:

> Claimant is average height and weight, cleanly groomed, poorly dressed. He is very simple-minded and does not readily understand many questions asked of him. He has very little information regarding his work and personal history. He is <u>slow</u> to respond to everything from answering questions to signing his name and dating documents. If he wasn't so clean looking and clear-eyed, I would swear he was on drugs.

(T. 98). (emphasis in original) Ms. Slocum, who interviewed the plaintiff, in person, found he had difficulty with reading, understanding, concentrating, answering and writing (T. 98).

Further, another DDS employee addressed the issue of claimant's possible mental retardation on October 23, 2003, and noted:

> ...The observations noted on the 3367, the fact that the clmt. states he cannot read on the 3368 & that he attended school to the 7th grade in special education all raised a question of a potential for MR. Upon closer look it is noted that the

clmt. has a history of driving and has held two separate maintenance jobs since
1988. The clmt. worked from 1988 to 1994 "fixing machines when the line
broke." From 1994-2002 the clmt. was employed "walking all over the plant to
fix machines" making $12 an hour. These jobs tend to indicate that the clmt's.
adaptive functioning is not consistent with MR. The clmt. should be rated
mentally non-severe.

(T. 105).

Plaintiff alleges a lack of finances and insurance with which to obtain medical treatment and medication (T. 169, 170, 108, 112). Nonetheless, the ALJ relied, in large part, on the plaintiff's lack of mental health treatment to discount the severity of his limited intellectual functioning and depression. The record contains no consultative examination concerning the plaintiff's alleged mental impairments, at least one of which, the limited intellectual functioning, was noticed and discussed by two employees of the SSA in the initial stage of the application process.

The failure to follow a prescribed course of treatment may be excused by a plaintiff's lack of funds. *Tome v. Schweiker, 724 F.2d at 714.* Medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. To a poor person, a medicine that he cannot afford to buy does not exist. *Dover v. Bowen, 784 F.2d 335, 337 (8th Cir.1986); Benson v. Heckler, 780 F.2d 16, 18 (8th Cir.1985); Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984).*

Upon consideration of the record, in its entirety, the undersigned questions the propriety of the ALJ's decision to terminate the sequential evaluation process, as to plaintiff's asserted mental impairments, at step two. The United States Supreme Court has recognized that this severity regulation increases efficiency by identifying at an early stage those claimants whose

-10-

AO72A
(Rev. 8/82)

medical impairments are so slight that it is unlikely they would be found disabled even if their age, education and work experience were taken into account. *Bowen v. Yuckert, 482 U.S. 137, 153 (1987).*

However, a majority of the Court adopted a standard allowing a denial of benefits at step 2 for "[o]nly those claimants with slight abnormalities that do no significantly limit 'any work activity.'" *Bowen v. Yuckert, 482 U.S. at 158.*

Thus, the sequential evaluation process can be terminated at step 2 only in cases where there is "no more than a minimal effect on the claimant's ability to work." *Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir.1989).* While the plaintiff did have the burden of showing a severe impairment that significantly limited his physical or mental ability to perform basic work activities, the burden of a plaintiff at this stage of the analysis is not great. *Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir.2001).*

Further, the Social Security Administration has published a ruling on the issue of severe impairments which cautions:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.... [S]equential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

*Social Security Ruling 85-28, quoted in Yuckert, 482U.S. at 158, 107 S.Ct. 2287.*

Applying this cautious standard to the evidence in the administrative record, we conclude that substantial evidence does not support the ALJ's decision to stop the sequential

-11-

analysis of the plaintiff's claim as to a limited intellectual functioning and depression with a step two finding that he has no severe impairment or combination of impairments. See *Gilbert v. Apfel, 175 F.3d 602, 604-05 (8th Cir.1999)*.

Finally, because we find that substantial evidence does not support the ALJ's determination with respect to plaintiff's asserted mental impairments, we cannot find that substantial evidence supports his reliance solely upon the Medical-Vocational Guidelines to determine that plaintiff is not disabled.

**Conclusion:**

Accordingly, the undersigned finds that the ALJ's decision to deny benefits to the plaintiff is not supported by substantial evidence and this matter should be reversed and remanded to the Commissioner for reconsideration of the alleged mental impairments, preferably to include a consultative examination by a mental health professional. Additionally, upon remand, the Commissioner should obtain the testimony of a VE, if warranted.

ENTERED this 6th day of July, 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)